UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ROBIN ET AL** | | **CIVIL ACTION** |
| **VERSUS** | | **NO. 20-1987** |
| **CREIGHTON-SMITH** | | **SECTION "L" (3)** |

### ORDER & REASONS

Before the Court is Plaintiffs' motion to remand and for attorney's fees and costs, R. Doc. 5. Having considered the parties' arguments and the applicable law, the Court now rules as follows.

### I.    BACKGROUND

This case arises from a dispute over the proceeds and management of Oyster Lease No. 34005, comprising 279 superficial acres of oyster bedding grounds in Christmas Camp Lake, St. Bernard, Louisiana. R. Doc. 1 ¶ 4. In 1994, Louisiana Department of Wildlife and Fisheries (LDWF) issued Oyster Lease No. 34005 to Defendant Courtney Creighton-Smith for a term of fifteen years.[1] Doc. 1-1 at ¶ 4. Subsequently, the parties entered into a sublease agreement ("Sublease Agreement") to lease the 279 acres to Plaintiffs Van Robin and Oyster Fisheries, Inc. on October 30, 2001 for the term of the lease. *Id*. at ¶ 8.[2] Mr. Robin and Ms. Creighton-Smith married on July 4, 1994 and divorced on July 23, 2004. *Id*. at ¶ 5. Three children were born during the marriage. *Id*.

---

[1] The specific date of Lease issuance and the date of the sublease is in dispute.
[2] The Sublease Agreement was recorded in the Conveyance Records of St. Bernard Parish on November 2, 2001. R. Doc. 1-1 at 11.

The Oyster Lease sustained extensive damage following the 2010 Deepwater Horizon explosion and resulting oil spill. *Id.* ¶¶ 29-37. Plaintiffs allege that Ms. Creighton-Smith collected an estimated $1,001,452.86 as part of the BP settlement and will collect another $300,000 from the HESI/Transocean settlement for damage to the reef substrate and standing stock on the Oyster Lease. *Id.* ¶¶ 35-36. Plaintiffs claim that the parties "agreed to let Ms. Creighton-Smith pursue" property damage claims with the Deepwater Horizon Claims Center (DHCC) in exchange for her oral promise to transfer the Oyster Lease to the parties' three children. *Id.* at ¶¶ 30-32. Plaintiffs seek to recover this settlement money on the grounds that Ms. Creighton-Smith has not transferred the lease in accordance with her promise, and additionally, did not actually sustain losses because Plaintiffs are the ones who maintain and harvest the oyster stock. *Id.* Furthermore, Plaintiffs allege that they have been deprived of their rights under the Sublease Agreement. R. Doc. 5-1 at 4.

On June 2, 2020, Mr. Robin and Oyster Fisheries brought suit in the 34th Judicial District Court against Ms. Creighton-Smith seeking damages for breach of contract and unjust enrichment and a declaratory judgment as to the validity and effectiveness of the Sublease Agreement. R. Doc. 4-1 ¶¶ 21-28. On July 10, 2020, Defendant removed the action to this Court. R. Doc. 1. On August 12, 2020, Plaintiffs filed a motion to remand the case for lack of subject matter jurisdiction and for attorney's fees and costs under 28 U.S.C. §1447(c). R. Doc. 5-1 at 9.

## II.    Law and Analysis

### A. Standard

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). This Court "may not exercise that jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552 (2005). Because removal jurisdiction "raises significant federalism concerns," *Willy v. Coastal Corp.*, 855 F.2d

1160, 1164 (5th Cir. 1988), it is strictly construed and doubts regarding removal jurisdiction should be resolved against federal jurisdiction, *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). The party invoking removal jurisdiction bears the burden of establishing federal jurisdiction over the state court suit. *Baby Oil, Inc. v. Cedyco Corp.,* 654 F. Supp. 2d 508, 515 (E.D. La. 2009) (citing *Frank v. Bear Stearns & Company*, 128 F.3d 919, 921-22 (5th Cir. 1997)).

A defendant may remove a civil action if a federal court would have had original jurisdiction over the case. 28 U.S.C. §1441(a). Federal district courts have original exclusive jurisdiction over "any civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). District courts also have jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Whether a case arises under federal law depends on if the "plaintiff's well-pleaded complaint raises issues of federal law." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

Federal question jurisdiction may exist when state law creates plaintiff's causes of action if the relief sought requires the resolution of "a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California,* 463 U.S. 1, 13 (1983). However, the "mere presence" of a federal issue does not "automatically confer federal-question jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson,* 478 U.S. 804, 813 (1986). Similarly, the existence of a disputed federal issue and the purported importance of a federal forum are "never necessarily dispositive." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005).

Rather than creating an automatic test, *Franchise Tax Board* "candidly recognized the need for careful judgments about the exercise of federal judicial power in an area of uncertain jurisdiction." *Merrell Dow, Inc. v. Thompson*, 478 U.S. 804, 813 (1986). Accordingly, to

determine if federal question jurisdiction exists, courts consider whether (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities. *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008).

**B) Discussion**

Defendant suggests three potential avenues for federal jurisdiction: 1) federal question jurisdiction under § 1331; 2) federal question jurisdiction under the Oil Pollution Act, 33 U.S.C. § 2717(b), and the Outer Continental Shelf Lands, 3 U.S.C. § 1349(b)(1); and 3) maritime jurisdiction under § 1333.[3] The Court will address each in turn.

i)        *Federal Question Jurisdiction under § 1331*

Federal question jurisdiction may exist over state-law causes of action if the relief sought requires the resolution of "a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California,* 463 U.S. 1, 13 (1983). Plaintiffs' well-pleaded complaint does not present any federal causes of action to support "arising under" jurisdiction. The issue is whether Plaintiffs' state law claims necessarily require resolution of a "substantial question of federal law" relating to the parties' rights to receive proceeds under the court-administered BP/HESI/Transocean settlement reached in *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20,* 2010, MDL No. 2179(J)(1). Doc. 1 at ¶ 17.

---

[3] Diversity jurisdiction is unavailable in this case. Mr. Robin is a resident and domiciliary of St. Bernard Parish, Louisiana. R. Doc. 4-1 at 1. Oyster Fisheries is a Louisiana corporation located in St. Bernard Parish. *Id*. Ms. Creighton-Smith is domiciled in St. Tammany Parish, Louisiana. *Id*.

In *Vekic v. Popich*, the Louisiana Supreme Court held that a contractual dispute over whether sublessees of oyster leases could seek BP settlement proceeds from their sublessor, was properly before the state court:

> The matter before us is one of contractual interpretation to determine the agreed-upon allocation of rights and obligations between the parties. Our role is not to litigate claims of BP's tortious conduct or to interpret the terms of the BP settlement; rather, our duty herein is to determine which party is entitled to bring those claims under the agreement at issue. The DHECC's denial of Mr. Vekic's claim as leaseholder of the subject property is not relevant *vis-à-vis* the parties to this agreement.

See 2017-0698 (La. 10/18/17), 236 So. 3d 526.

Likewise, this case does not require a court to determine BP's liability to the parties or to evaluate or interpret the BP settlement terms. Plaintiffs' claims do not intrude on Judge Barbier's ongoing jurisdiction to administer the BP/HESI/Transocean settlement in MDL 2179. Instead, resolution of this case requires inquiry into the validity of the Sublease Agreement, an alleged beach of an oral promise, and claims in equity for unjust enrichment. These are purely contractual claims. Thus, the Court does not find resolution of a federal issue to be necessary to the resolution of Plaintiffs' state law claims.

Further, based upon the parties' pleadings, there is no indication that a federal issue is *actually disputed*. See *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008). Plaintiffs concede Ms. Creighton-Smith was proper recipient of the funds under the compensation plan as the leaseholder of record. R. Docs. 5-1 at 6, 9 at 2. The mere fact that the BP settlement is implicated in Plaintiffs' state law claims is not enough to give rise to federal question jurisdiction. *See Merrell Dow Pharms. Inc. v. Thompson,* 478 U.S. 804, 813 (1986) ("[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum.

Lastly, the Court must consider whether federal jurisdiction would "disturb the balance of federal and state judicial responsibilities." *Singh*, 538 F.3d at 338 (5th Cir. 2008). This dispute is governed by private contract and state law. Retaining jurisdiction over the case in place of the state court, which is well equipped for determinations of state law, would "upset the state-federal line drawn (or at least assumed) by Congress." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (internal citations omitted). As previously stated, any doubts regarding removal jurisdiction should be resolved against federal jurisdiction, *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000), and accordingly, Court finds there is no federal question jurisdiction under §1331.

    ii)       *Oil Pollution Act and the Outer Continental Shelf Lands*

The Court does not find this case to be within the purview of the Oil Pollution Act, 33 U.S.C. § 2717(b) or the Outer Continental Shelf Lands Act, 43 U.S.C. § 1349(b)(1). Plaintiffs' complaint on its face does not allege a cause of action under either statute. Section 1349(b) provides that district courts have jurisdiction over cases arising out of or in connection with "any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals. Plaintiffs' contractual claims under the Sublease Agreement are at best only tangentially related to such an operation and do not come close to meeting the but-for test required to give rise to jurisdiction under.[4] *Bd. of Comm'rs of the Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co., LLC,* 29 F. Supp. 3d 808, 837 (E.D. La. 2014) (declining

---

[4] Jurisdiction under § 1349(b)(1) requires a two-part analysis: (1) the activities that caused the injury constituted an 'operation' 'conducted on the outer Continental Shelf' that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the operation." *In re DEEPWATER HORIZON*, 745 F.3d 157, 162 (5th Cir. 2014).

to exercise jurisdiction over "such an attenuated relationship between operations on the OCS and the conduct and injuries at issue in the litigation").

      *iii)*      *Maritime Jurisdiction under § 1333*

Federal district courts have original jurisdiction over "any civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). Defendant relies on *W. Geophysical Co. v. Adriatic, Inc.*, No. CIV. A. 96-513, 1996 WL 453125, \*3 (E.D. La. Aug. 9, 1996) for proposition that "oyster harvesting is a traditional maritime activity." However, whether an incident is "substantially related to traditional maritime activity" is just one part of the inquiry. *See Fox v. S. Scrap Exp. Co.*, 618 So. 2d 844, 847 (La. 1993) (describing the evolution of the admiralty tort jurisdictional test from *Executive Jet* to *Foremost* to *Sisson*); *see also Sisson v. Ruby*, 497 U.S. 358 (1990); *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio,* 409 U.S. 249 (1972) *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). To determine admiralty tort jurisdiction, a court must inquire whether a tort (1) occurred on navigable water, or an injury suffered on land was caused by a vessel on water (the location test); and (2) "the incident has a potentially disruptive impact on maritime commerce," or "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity" (the connection test). *Gulf Coast Shell & Aggregate LP v. Newlin,* 623 F.3d 235, 240 (5th Cir. 2010) (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 34 (1995) (internal citations omitted).

This test is not applicable here because Plaintiffs' action is in contract, not tort. *W. Geophysical* involved trespass and tortious damage to oyster beds by Western's vessels engaged in maritime commerce. R. Doc. 5-1 at 7. Defendant's suggestion that Plaintiffs' claim seeking the

exclusive right to possess Lease No. 34005 is comparable to allegations of trespass is unconvincing and a mischaracterization of Plaintiffs' claims. 1996 WL 45312, *3 (1996).

Instead, the relevant inquiry is whether the lease or Sublease Agreement at issue are maritime contracts for the purpose of 28 U.S.C. § 1333. The Court acknowledges that the "boundaries of admiralty jurisdiction over contracts…have always been difficult to draw." *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961). To constitute a maritime contract, the contract must "relat[e] to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment." *Gulf Coast Shell & Aggregate LP v. Newlin*, 623 F.3d 235, 240 (5th Cir. 2010) (emphasis added) (*quoting J.A.R. Inc, v. M/V Lady Lucille*, 983 F.2d 96, 98 (5th Cir 1992)). Courts consider "the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." *Constantin Land Trust v. Epic Diving & Servs., LLC*, No. 12-259, 2013 U.S. Dist. LEXIS 44607, at *28-9 (E.D. La. Mar. 27, 2013) (*quoting St Fire & Marine Ins. Co. v. Board of Comm'rs*. Paul, 418 Fed. Appx. 305, 307-08 (5th Cir. 2011)). Courts also consider whether the "protection of maritime commerce" is the principle objective of the contract. *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 25 (2004).

The Sublease Agreement in this case is not a maritime contract under this test. The nature of this contract is to govern the property rights related to the oyster bedding ground, not to address maritime service or transactions. The Sublease Agreement between the parties simply refers to the leased property by size, location, and as "lease no. 34005". There is no mention of the activities that will take place on the leased property. Plaintiffs contend that Ms. Creighton-Smith has never operated in maritime commerce, harvested oysters from the lease, or even been to the lease. R.

Doc. 5-1 at 8. Additionally, Plaintiffs allege Defendant has "never navigated a boat to Christmas Camp Lake where her lease is situated." R. Doc. 9 at 3.

Although some cases have held that oyster harvesting constitutes a traditional maritime activity, this was in the context of admiralty *tort* jurisdiction in cases where oyster harvesters were damaged by vessels engaged in maritime commerce. This does not support a grant of maritime jurisdiction for a contractual dispute between parties that has oyster bedding grounds as its subject. The Sublease Agreement is not a maritime contract; therefore, the Court cannot properly exercise jurisdiction pursuant to 28 U.S.C. § 1333.

## B. Attorney's Fees

28 U.S.C. § 1447 provides that an order remanding the case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Section 1447 does not "embody either a strong preference for or a strong preference against fee awards." *Admiral Ins. Co. v. Abshire*, 574 F.3d 267, 280 (5th Cir. 2009). Absent unusual circumstances, a court may award attorney's fees "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005). The district court should "recognize the desire deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id*. at 140.

Although Defendants' arguments against removal are ultimately unpersuasive, they do not warrant the imposition of attorney's fees and costs. The purpose of the removal statute is to provide defendants with the opportunity to access a federal forum. It would plainly contradict Congressional intent to impose attorney's fees and costs on every defendant who was unsuccessful

in doing so, as it would discourage parties from seeking removal altogether. Here, Defendant had a colorable, non-frivolous argument for removing the case to federal court based on federal question and maritime jurisdiction. However, after considering the parties' arguments and relevant law, the Court finds that it lacks subject matter jurisdiction over the claims at issue in the case.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' motion to remand is **GRANTED.** Plaintiffs' request for attorney's fees and costs is **DENIED.** The case is hereby remanded to the 34th Judicial District Court for the Parish of St. Bernard.

New Orleans, Louisiana on this 22nd day of September, 2020.

_____
UNITED STATES DISTRICT JUDGE